TATE, Judge.
This is a proceeding by a landlord owner to evict the defendant tenants. LSA-C.C.P. Art. 4701 et seq. The defendant tenants appeal from judgment of eviction. The issues of the appeal are primarily factual.
The plaintiff is the owner-landlord of shopping-center premises leased to the defendant tenants. Under the terms of the 1961 written lease, the tenants were obligated to pay an annual rental of one hundred thousand dollars in equal monthly instal-ments, as well as to manage, operate, repair, and insure the shopping center at their (the tenants’) expense.
The plaintiff landlord sued to evict the tenants on the ground that they had breached certain lease obligations, entitling the landlord to cancellation. The trial court found, as alleged by the landlord, that the tenants had substantially breached at least three of their obligations under the lease — to maintain insurance on the premises, to operate properly and keep in good repair the shopping center, and to reim *124 burse the landlord for amounts expended by it to accomplish these lease require-ents upon the tenants’ failure to do so.
By their appeal, the defendant tenants principally contend that the evidence does not support these factual determinations by the trial court. The tenants also rely upon some technical obligations to admissibility of some of the evidence. It is not disputed that the landlords were entitled to cancellation of the lease upon proof of any of the breaches alleged.
Without detailed comment, we shall simply say that the great preponderance of the evidence supports the trial court’s factual determinations. Breaches of the lease in the respects found by it were adequately proved, even aside from the evidence to which objection was entered by defendant-appellant.
To consider, for instance, only the breach of the obligation concerning the maintenance of the required insurance:
Under the lease, the tenant was obligated at its sole cost and expense to maintain fire and extended coverage insurance on the premises in an amount of at least eight hundred thousand dollars (Section 7.01), as well as to 'maintain public liability insurance in the amount of one million dollars (Section 7.07). The tenant was required to take out such insurance for at least one year in advance and to prepay same on an annual (not a “financed”, i. e., monthly) basis. Section 7.03.
If the defendant failed to take out, pay for, or maintain such insurance policies, then the landlord at his option was entitled to do so itself (Section 8.01), charging same to the tenant as an additional rental which was immediately payable to the landlord on demand (Section 8.02). It was specifically provided that the landlord did not waive or release the tenant from any obligation or default under the lease by providing insurance itself when the tenant defaulted. Sections 8.01, 21.06, 21.08.
The plaintiff corporation’s president testified that in October 1963 he received, in the routine course of his business, a notice of the cancellation of the fire insurance maintained on the subject leased premises. Tr. 213. See also P-12, Tr. 134. The plaintiff landlord’s president testified that by telephone he questioned the defendant tenants’ president concerning this and was informed that the tenants’ president knew nothing about this. The plaintiff’s president thereupon called the defendants’ insurance agent and was informed that the insurance had been cancelled because the defendants had not paid the premiums.
The plaintiff’s president then called the defendants’ president and told him that he was going to secure insurance within twenty-four hours unless the defendants’ president convinced him he indeed had insurance. Hearing nothing further, the plaintiff’s president obtained insurance on the premises which obligated plaintiff to pay the premiums in excess of six thousand dollars annually. In the course of his testimony, the witness also identified copies of other notices of cancellation received by him of various insurance coverages in the ordinary course of business. See P-9, Tr. 131; P-10, Tr. 132.
By letters of March 20, 1964 (P-13, Tr. 135, and June 1, 1964, P-16, Tr. 139), the plaintiff landlord informed the defendant tenants of the breach of their obligations because of, inter alia, their failure to take out, pay for, and maintain insurance as required by the lease, as well as to reimburse the landlord for the amounts paid by it to obtain such insurance. Reimbursement of such premiums in the amount of $6,726.70 was requested by the letter of March 20, 1964. The tenants never did so.
At the eviction trial, the defendant tenants did not attempt to disprove this testimony. The defendants’ president contented himself with stating that he could not testify as to whether or not the premiums had been paid, that he did not know of his own knowledge whether or not the insurance *125 policies had been cancelled, and that he did not have his records with him to determine the facts as to these matters. Tr. 179, 183. He knew of no other reason why the insurance might have been cancelled except for nonpayment of the premiums. Tr. 179.
In contending that the nonpayment of insurance was not sufficiently proved, ihe defendants apparently contend that the cancellation of the defendants’ insurance on the premises was not sufficiently proved by the carbon copies of cancellation notices received by the plaintiff (as joint payee under a loss payable clause) in the ordinary course of business. While perhaps such copies by themselves, as secondary evidence, may have been insufficient proof of cancellation, 32A C.J.S. Evidence §§ 813, 816, 817, 821 (but see Sections 828, 832 taking into consideration that originals, if still existent, were in custody of the defendants) ; nevertheless, we believe the copies were at least admissible as evidence that the landlord did receive notice that the defendant tenants’ insurance had been cancelled (i. e., as proof of a circumstance collateral to the issue of cancellation, Ibid, Section 820; 4 Wigmore on Evidence, 3d ed. 1940, Sections 1252-1254), as well as being evidence corroborative (Ibid, Section 703) of the plaintiff’s president’s direct and uncontradicted sworn testimony to the effect that the defendants had permitted the insurance coverage to lapse. At any rate, this direct testimony of the landlord’s president, admitted without objection, by itself sufficiently proves the defendants’ breach of their lease obligation to maintain and pay for insurance on the premises.
The defendant tenants also contend that the obligation to maintain insurance was not breached because in fact the plaintiff landlord (after the tenants’ default) did obtain such insurance. This is not a very impressive argument. The lease authorized the landlord to do so upon the tenants’ default (Section 8.01, referred to above), but the tenant was by the lease then required to reimburse the landlord for the full annual premium so paid by the landlord (Section 8.02). Despite the landlord’s letter of March 21, 1964, requesting reimbursement of the premiums prepaid by it in excess of six thousand dollars annually, see P-13, Tr.. 135, the plaintiff failed to comply also with this lease obligation to repay such sums as-additional rent, Section 8.02.
As the trial court held, the preponderance-of the (practically uncontradicted) evidence definitely proves several breaches of the lease obligations entitled the plaintiff landlord to cancellation of the lease and to eviction of the tenants. Accordingly, we-affirm the trial court’s judgment so holding. The costs of this appeal are to be-paid by the defendants-appellants.
Affirmed.